BURR (PRATT v.). See Cases Nos. 11,372 and 11,373.

---

## Case No. 2,194.

### BURR et al. v. PRENTISS et al.

[N. Y. Times, Oct. 13, 1853; Law's Pat. Dig. 367, 393, 547.]

Circuit Court, S. D. New York. Oct., 1853.

PATENTS—HAT BODIES—INFRINGEMENT — PRELIMINARY INJUNCTION—ADJUDICATION AT LAW.

[1. On motion for a preliminary injunction, a verdict against other defendants, sustaining the validity of plaintiff's patent, while not conclusive, is entitled to great consideration; and, if the alleged infringing machine is substantially similar to plaintiff's, an injunction should issue.]

[2. A patent for machinery for making hat bodies, consisting in part of a chamber so shaped as to concentrate flying fur from a revolving brush, and to discharge it by means of a vacuum and air current upon a perforated or wire cone, and for a process whereby, after the formation of the bat on the cone, it is covered with moist cloth, and another like cone placed within the one upon which the bat is formed, so as to facilitate its handling and immersion in water, is infringed by machinery in which the chamber is partitioned, and in which the fur fibres pass through each compartment to the point of discharge, to a perforated cone or wire gauze, with a finer one of grass cloth over it, furnished with an exhaust chamber and means of producing an air current and substituting a metallic picker for the revolving brush; the bat being hardened, so as to be easily handled, by the discharge of steam jets upon it during the process of its formation.]

[In equity. Bill by —— St. John, Henry A. Burr, and Alva B. Taylor against John H. Prentiss, James H. Prentiss, William H. Ames, Henry Moulton, and Lansing E. Hopkins to restrain infringement of patent No. 4,472.] This was a motion for [a preliminary] injunction to restrain the defendants from any further infringement of the letters patent granted to Henry A. Wells [April 25, 1846, for an improvement in the machinery] for making hat bodies [and in the process of their manufacture], and assigned to the complainants. [Motion granted.]

Edward & N. Dickerson and Charles M. Keller, for complainants.

E. W. Stoughton and Daniel Lord, for respondents.

NELSON, Circuit Justice. The bill in this case has been filed by the complainants, assignees of H. A. Wells, the patentee, for an improvement in machinery for making hat bodies, against the defendants, to restrain them from an illegal infringement of the patent. The patent was granted on the 25th of April, 1846. The complainants have heretofore filed a bill in the third circuit of the United States against persons charged with infringing the patent, and the court, after hearing the motion for an injunction, granted it, and afterwards directed an issue to try the validity of the patent and the question of infringement, on the law side of the court, which issues came on for trial in May, 1850; and, after a full and strongly contested trial, the jury found a verdict for the complainants, upon which the injunction previously issued was made perpetual.

The improved machinery of the patentee consists in feeding the fur after it is picked to a rotating brush, between two endless belts of cloth, one above the other, the lower horizontal, the other inclined, so as to compress the fur, and enable the brush the better to take hold of it, and which, moving with great velocity, throws it into a chamber or tunnel, which is gradually changed in form towards the outlet at the other end, for the purpose of concentrating the flying fur and directing it on to a cone, which is placed just in front of the delivery aperture of the chamber to receive the fur. The cone is perforated, or made of wires, and the air beneath exhausted by a contrivance fitted for that purpose. There is also an opening in the chamber to let in the air, which, with that produced by the action of the revolving brush, more readily directs the floating fibres of the fur in the chambers to the exhausted cone, in connection with the draft produced through the wires by the exhaustion of the air below. There is, also, a contrivance at the end of the chamber or tunnel, where the fur is discharged on the cone, to regulate and adjust the thickness of the bat, corresponding to the parts requiring more or less in the formation of the hat body. After the bat is thus formed on the cone, it is removed; and this is, of course, a somewhat delicate operation, as the fibres have not sufficient adhesion to admit the removal until subjected to a hardening process. And, therefore, the bat is covered with moist felted or fulled cloth, before being removed, and over which is placed a perforated metallic cone, to produce pressure upon the fibres of the bat, and at the same time admit of the circulation of warm water, in which it is immersed, to harden the bat preparatory to the felting; and another metallic cone within the one on which the bat is formed, as that is thin and weak, so as to enable the whole to resist the pressure of the surrounding water, in the process of immersion. The specification contains a minute and full description of the several parts of the machinery used, accompanied with drawings, so that a person of ordinary skill in this branch of business can readily understand it. The patentee claims, among other things: 1. The chamber into which the fibres of the fur are thrown by the

brush, in combination with the perforated cone, placed in front of the aperture of delivery for the purpose and in the manner substantially as described, the said chamber being provided with an aperture below and back of the brush, for the admission of a current of air, to aid in throwing and directing the fibres onto the cone as described. And, 2. In the process the patentee claims hardening the bat with the perforated cone, and preparatory to its removal therefrom, by immersing it in hot water as described. The defendants deny the originality of the invention, and also the infringement, insisting that the machinery used by them is substantially different from that described in the patent of Wells; and, further, that their process of hardening the bat is materially different, and superior in its effect and operation.

Upon the question of originality, as the complainants have obtained a verdict of a jury in their favor, after a full and well contested trial in another circuit, I shall not deem it necessary to examine it very much at large; for, although that verdict does not conclude them, the litigation having been between different parties, still, upon this preliminary motion for an injunction, it is entitled to very great consideration. I have examined carefully the evidence produced upon that trial by the parties, which constitutes part of the proofs in this case, and has been referred to in the argument by the learned counsel on both sides, and am satisfied that the clear weight of it is with the verdict rendered.

The main ground relied on in the trial at Philadelphia for the purpose of disproving the originality of this improvement was certain inventions of Thos. R. Williams, in England, for manufacturing hat bodies, and in respect to which a great deal of evidence was given. This is also the main ground relied upon here to resist the motion. Williams took out two patents in England,—one in 1833, and the other in 1837. He took out a patent also in this country in 1840, for the improvement embraced in his patent of 1837, in England. These patents, or a description of the machinery and improvements upon which they were issued, and evidence of the practical operation of the machines, were before the court and jury in the trial at law; and the only one in which there can be any pretension the novelty of Wells' improvement may be found is the patent of 1837, or the one taken out in this country in 1840; and the weight of the proofs before me is, that this machine of Williams never went into successful operation. The evidence on the trial at law shows that it was laid aside after an unsuccessful attempt to make hat bodies; and there is no proof before me furnished on this motion, leading to any different conclusion. And besides, according to the evidence of one of the present defendants, Lansing E. Hopkins, the discovery and improvement of the present patentee (Wells) is of an earlier date than that of Williams. He suggested and described it to Hopkins in 1833, and soon after went to England; and on his return in 1842 the first machine was built and put in operation. Wells, also, described and explained the machine to Mr. Sullivan, in London, in December, 1836. It appears, therefore, that the present patentee was not only the first person, so far as the evidence goes, who suggested the improvement for which he has obtained a patent, but also the first to construct a machine that has gone into successful operation; for it appears to be admitted, on all sides, that this improvement of Wells was the first that ever went into successful practical use in making hat bodies by machinery.

The defendants have also relied upon a patent to Thomas Blanchard, June 14, 1837, as evidence of the want of originality in the improvement of Wells. This machine was invented by Mr. Blanchard (the well known and ingenious inventor of the machine for turning gun stocks and other irregular figures), and successfully used as early as 1833, if not prior to that time; and there is no doubt but that he is entitled to the credit of the thought and contrivance, without which all these machines for making hat bodies would be useless, or, rather, would never have been thought of. He first suggested the most ingenious idea of producing a vacuum under a sheet of wire cloth, by the operations of which the fibres of the fur, when thrown into the air, will be drawn down to the wire sheet, and there formed into a bat or web for napping hat bodies, or making bodies for hats, instead of bowing according to the old method. Mr. B.'s machine was constructed to form webs of plain fur batting. The improvement of Wells is the suggestion of a perforated or wire cone, forming thereby the body of the hat in the shape desirable, and adapting the machinery so as to produce the required result; and at the same time contriving means of taking the web of fur from the cone without injury to its shape or texture. All this he had most successfully accomplished; and although the ingenuity displayed is not to be compared to the idea struck out by Blanchard, and which lies at the foundation of the improvement, it must be admitted that it is one of very great merit, and deserving all reasonable protection. By means of it from two hundred and fifty to three hundred hat bodies are made in a day, by one hand, when, according to the old mode of bowing, not to exceed twenty or thirty, if I recollect right.

The next question is, whether, or not the machine used by the defendants is an infringement or, in other words, is substantially the same as the one described in the complainants' patent. Upon this question the experts, as usual, differ. I have, therefore, been under the necessity of examining the machines for myself, which were before

me on the argument; and from that examination I am entirely satisfied that the defendants' is but a colorable copy of the complainants'. They have divided the tunnel or chamber into two, by making a partition through the centre of Wells', the fibres of the fur passing through each apartment to the point of discharge on the cone; in other words, they use a duplicate of Wells' tunnel, and call it a different contrivance. They have also a contrivance by which they connect the exhausting-box beneath the cone with the aperture in the tunnel, and can thereby increase the current of air in the tunnel, if necessary or important: though, for aught that appears, the complainants' works equally well without it. They use also a perforated cone or wire gauze, of larger openings than Wells', and put a finer one of grasscloth over it. They also substitute a metallic picker, instead of the hair-brush for throwing the fibres into the tunnels or chambers; and finally, instead of immersing the bat formed upon the cone in warm water, to harden it, so that it may be readily removed, they discharge jets of steam upon the bat as it is in the process of formation. A good many witnesses have been examined on the part of the defendants, for the purpose of showing that this process of moistening the bat while forming upon the cone produces a better hat body than when hardened by immersion in warm water. But, admitting this to be an improvement, it does not necessarily absorb the process which Wells claims of hardening the bat by the use of warm water, if that was original with him.

Upon the whole, without pursuing the examination further, I am satisfied that Wells was the first and original inventor of the machine described in his patent for making hat bodies, and of the process of hardening the bat, preparatory to the removal of it from the cone; and that the machine of the defendants, and mode of making the hat body, are substantially the same, and that the complainants are entitled to the injunction.